ROBERT R. CLOVER AND JOYCE A. CLOVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clover v. Commissioner
Docket No. 3920-75.
United States Tax Court
T.C. Memo 1983-181; 1983 Tax Ct. Memo LEXIS 604; 45 T.C.M. (CCH) 1175; T.C.M. (RIA) 83181; April 4, 1983. *604 Alan R. Harter, for the petitioners. Ronald D. Dalrymple and Bobby D. Burns, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's Motion for Summary Judgment filed herein.After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
*605 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment filed on February 15, 1983, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent, in his notice of deficiency issued to petitioners on February 21, 1975, determined deficiencies in petitioners' Federal income tax and additions to the tax for the taxable calendar years 1972 and 1973 in the following respective amounts: Additions to Tax, I.R.C. 1954
Years
Income Tax
Section 6653(a) [3]
1972
$3,610.12
$180.51
1973
2,490.39
124.52
The adjustments determined by respondent in his deficiency notice are for unreported tip ("toke") income received by petitioners in 1972 and 1973 in the amounts of $13,008.00 and $8,725.00, respectively. In addition, there is an automatic adjustment for 1973 medical expenses in the amount of $261.75.
Petitioners timely filed their petition on May 5, 1975 and respondent filed his answer *606 thereto on June 19, 1975. Thus, the pleadings are closed. Respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 38, and 121. When respondent's good faith attempts to make arrangements with petitioners' counsel for informal consultations or communications proved unsuccessful, [4] he, not desiring to rest on the pleadings alone, on August 19, 1982, served two separate Requests for Admissions on petitioners' counsel. [5] Petitioners' counsel at no time served written answers upon respondent nor did he file an original of such answers with the Court. Rule 90(c). Hence, each matter contained in respondent's requests for admissions are deemed admitted and conclusively established. [6]
*607 The following findings of fact are based upon the record as a whole, the allegations of respondent's answer admitting allegations in the petition, the matters deemed admitted with respect to respondent's requests for admissions, and exhibits attached to respondent's motion. FINDINGS OF FACT Petitioners' resided at 4208 Esmeralda, Las Vegas, Nevada on the date their petition was filed.They filed joint 1972 and 1973 Federal income tax returns with the Internal Revenue Service. Robert R. Clover
During 1972 and 1973 petitioner was employed as a craps dealer and was a member of a "craps crew" at the Sands Hotel and Casino ("Sands") and the Golden Gate Casino ("Golden Gate"), both of which are located in Las Vegas, Nevada. A craps crew consisted of four dealers who manned one table. Three of the dealers worked while the other was on break on a rotational basis. The crews rotated tables periodically, to equalize the work and tokes received, between the more desirable and busier table locations and those less desirable and therefore less busy. Petitioner's normal work shift constituted 8 hours per day and he was required by his employers to work 5 days out of any consecutive *608 7 day period. In the course of his employment petitioner received tokes from patrons of Sands and Golden Gate. In accordance with house rules these tokes were routinely pooled by petitioner and other craps dealers on his crew, by placing said tokes in a common toke box for his particular crew, before leaving the area of the gaming tables on a break or at the end of a shift. The total amount so pooled was divided equally at the end of each 8-hour shift among the craps dealers on that particular crew who were on duty during that 8-hour period. Under house rules some provision was made for allowing a share of the tokes for dealers who were unable to work due to illness. During 1972 and 1973 petitioner received his equal share of such pooled tokes. Petitioner was paid a salary by his employers in 1972 and 1973. The salary was in addition to the tokes he received in those years. In 1972 he was paid a salary by Sands for 238 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts did not exceed 15 for 1972. [7] During 1973 he was paid a salary by Sands for 31 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts *609 did not exceed 3 for 1973. In 1973 petitioner was paid a salary by Golden Gate for 108 8-hour shifts. He was paid for shifts when he did not actually work, such shifts did not exceed 8 for 1973. Petitioner is required by law to report the toke income he received to his employers. For 1972 and 1973 he reported to his employers that he received toke income in the respective amounts of $1,111.00 and $ 00.00. [8] The amounts so reported to his employers and reported on the 1972 and 1973 joint returns were based on estimates and not upon any written record. No additional toke income received by petitioner in 1972 and 1973 was reported on those returns. The amount of toke income received by petitioner at Sands in 1972 averaged not less than $30 for each 8-hour shift he actually worked. The *610 amount of toke income received by petitioner at Sands in 1973 averaged not less than $35 for each 8-hour shift he actually worked and at Golden Gate it averaged not less than $10. Joyce A. Clover
During 1972 and 1973 petitioner was employed as a blackjack dealer at the Riviera Hotel and Casino ("Riviera") and Jerry's Nugget Casino ("Jerry's"), both of which are located in Las Vegas, Nevada. Her normal work shift constituted 8 hours per day and she was only required to work, by her employers, 5 days out of any consecutive 7 day period. In the course of her employment, petitioner received tokes from patrons of the Riviera and Jerry's. In accordance with house rules these tokes were routinely pooled by petitioner and other blackjack dealers by placing said tokes in a common toke box before leaving the area of the gaming tables on a break or at the end of a shift. The total amount so pooled was divided at the end of each 24-hour period among the dealers on duty during that 24-hour period. These pooled tokes were divided on the basis of a full share to a dealer for each 8 hour shift. Dealers generally received their share of the pooled tokes in an envelope when they returned *611 to work at the beginning of their next shift. Under house rules some provision was made for allowing a share of the tokes for dealers who were unable to work because of sickness. During 1972 and 1973 petitioner participated in and received her equal share of such pooled tokes. Petitioner was paid a salary by her employers in 1972 and 1973. The salary was in addition to the tokes she received in those years. In 1972 she was paid a salary by Riviera for 177 8-hour shifts. She was paid for 8-hour shifts when she did not actually work, such shifts did not exceed 17 for 1972. During 1972 she was paid a salary by Jerry's for 66 8-hour shifts. She was paid for 8-hour shifts when she did not actually work, such shifts did not exceed 6 for 1972. In 1973 she was paid a salary by Riviera for 184 8-hour shifts. She was paid for 8-hour shifts when she did not actually work, such shifts did not exceed 14 for 1973. During 1973 she was paid a salary by Jerry's for 30 8-hour shifts. She was paid for 8-hour shifts when she did not actually work, such shifts did not exceed 5 for 1973. Petitioner is required by law to report the toke income she received to her employers. For 1972 and *612 1973 she reported to her employers that she received toke income in the respective amounts of $983.33 and $1,408.00. Said amounts were reflected on the Forms W-2 issued by her employers and is included in gross wages. The amounts so reported to her employers and reported on the 1972 and 1973 joint returns were based on estimates and not upon any written record. No additional toke income received by petitioner in 1972 and 1973 was reported on those returns. The amount of toke income received by petitioner at the Riviera in 1972 and 1973 averaged not less than $42 for each 8-hour shift she actually worked. The amount of toke income received by petitioner at Jerry's in 1972 and 1973 averaged not less than $8 for each 8-hour shift she actually worked. The following findings of fact appertain to both petitioners. In 1972 petitioners received taxable toke income as follows: 223 shifts at $30
$ 6,690.00
160 shifts at $42
6,720.00
60 shifts at $ 8
480.00
$13,890.00
In 1973 petitioners received taxable toke income as follows: 28 shifts at $35
$ 980.00
100 shifts at $10
1,000.00
170 shifts at $42
7,140.00
25 shifts at $ 8
200.00
$9,320.00
*613 On their joint Federal income tax returns for 1972 and 1973 petitioners reported taxable toke income in the respective amounts of $2,094.00 and $1,408.00. Petitioners received additional unreported taxable toke income in the taxable years 1972 and 1973 in the amounts of $11,796.00 and $7,912.00. Petitioners, in 1972 and 1973, did not maintain a written diary, log, worksheet, or other record, made at or near the time they received tokes, which set forth the date, amount of tokes received and amounts they may have expended as gratuities to co-workers. Players ("patrons") at the various establishments at which petitioners worked did from time to time place bets on petitioners' behalf. Such bets remained under the control of the patrons until the winnings, if any, were actually given to petitioners. The patron was free to take back the winning bet if he or she so desired. The Nevada State Gaming Authority regards a bet made by a patron for petitioners as a wager made by and on behalf of the patron. Petitioners were forbidden from gambling or placing bets at the table they were working. Under house rules any winning bets received by petitioners were pooled and distributed. *614 Neither petitioners nor the toke pool was required to reimburse a patron who had placed a losing bet on petitioners' behalf. In 1972 and 1973 petitioners gambled in their individual and private capacity in their off duty time. They maintained no records which accurately reflected the date, amount of bets and amounts won and lost. Petitioners do not have in their possession or under their control any documentary evidence to support the allegations in their petition that respondent's determinations are arbitrary. Their failure to maintain adequate records and to accurately report the full amount of the toke income they received in 1972 and 1973 on their 1972 and 1973 joint returns was due to negligence. OPINION It is well settled that tokes are not gifts but taxable income which must be included in a taxpayer's gross income. Olk v. United States,536 F.2d 876 (9th Cir. 1976); [9]Foreman v. Commissioner,T.C. Memo. 1983-130; Parker v. Commissioner,T.C. Memo. 1983-87; Kurimai v. Commissioner,T.C. Memo. 1983-86; Parker v. Commissioner,T.C. Memo. 1983-85; Randolph v. Commissioner,T.C. Memo. 1983-84; *615 Owens v. Commissioner,T.C. Memo. 1983-30, (on appeal 9th Cir., Feb. 14, 1983); Williams v. Commissioner,T.C. Memo. 1980-494. It is conclusively established in this record that petitioners received unreported toke income in 1972 and 1973 in the respective amounts of $11,796.00 and $7,912.00. Petitioners' contention that respondent's determinations are arbitrary is baseless. Here, petitioners kept no records which would accurately reflect the toke income which they received in 1972 and 1973. In such circumstance, the Commissioner may, in his notice of deficiency, make a determination based upon any reasonable method where a taxpayer refuses to produce his records or where those records are inadequately maintained. Holland v. United States,348 U.S. 121 (1954); Merritt v. Commissioner,301 F.2d 484, 486 (5th Cir. 1962); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3rd Cir. 1977); Giddio v. Commissioner,54 T.C. 1530 (1970); *616 Meneguzzo v. Commissioner,43 T.C. 824 (1965). [10]
Respondent's determinations herein are presumptively correct and the burden is on petitioners to establish that they are incorrect or arbitrary. Welch v. Helvering,290 U.S. 111 (1933); Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978); Rule 142(a). Petitioners here totally failed to show that those determinations are incorrect or arbitrary. Rule 121(b) provides that a motion for summary judgment shall be granted if the "pleadings * * * admissions and any other acceptable materials, together with the affidavits * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *". [Emphasis supplied.] Here, petitioners have refused *617 to submit any information which contradicts respondent's factual determinations. On the basis of the pleadings, those matters deemed admitted in respondent's requests for admissions, the exhibits attached to respondent's motion (which include copies of the 1972 and 1973 returns and a full copy of the notice of deficiency) and respondents' affidavit, respondent has amply demonstrated to our satisfaction that there is no genuine issue as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. Hence, summary judgment is a proper procedure for disposition of this case. To reflect the foregoing and respondent's concessions An appropriate order will be issued.
Footnotes
1. Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule. The parties were afforded a full opportunity to present their views on the law at the hearing at Washington, D.C. on March 16, 1983. No appearance was made by or an behalf of petitioners nor was a response to respondent's motion filed, albeit a copy thereof and a copy of respondents' affidavit together with a copy of the Court's Notice of Hearing were served on petitioners' counsel by the Court on February 17, 1983. See Rule 50(c), Tax Court Rules of Practice and Procedure.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. All section references are to the Internal Revenue Code of 1954, as amended.↩
4. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 5. The originals of those requests were filed with the Court on August 23, 1982. Rule 90(b). ↩
6. See Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Rules 90(c) and (e). See also McKinnon v. Commissioner,T.C. Memo. 1982-229; Knudson v. Commissioner,T.C. Memo. 1982-179; Oaks v. Commissioner,T.C. Memo. 1981-605; Wallace v. Commissioner,T.C. Memo. 1981-274; Myers v. Commissioner,T.C. Memo. 1980-549; Edelson v. Commissioner,T.C. Memo. 1979-431; Saba v. Commissioner,T.C. Memo. 1979-397; Bassett v. Commissioner,T.C. Memo. 1979-14↩.
7. For purposes of his motion herein under consideration only, respondent now concedes, as to each petitioner, the amount of tokes attributable to all 8-hour shifts for which they were paid but did not actually work. Therefore, a Rule 155 computation will be necessary in this case.↩
8. Toke income is reflected on the Forms W-2 issued by the employers and is included in gross wages.↩
9. We observe that venue on appeal of this case would lie in the United States Court of Appeals for the Ninth Circuit.↩
10. The method used here by respondent was clearly reasonable. See Williams v. Commissioner,T.C. Memo. 1980-494↩, where on facts virtually indistinguishable from those we consider herein, this Court stated--"We conclude that 'all tokes' received by petitioners, whether directly from the player or through a winning bet, are taxable gratuities".