RICHARD L. FARKAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farkas v. Commissioner
Docket No. 14253-84.
United States Tax Court
T.C. Memo 1986-420; 1986 Tax Ct. Memo LEXIS 189; 52 T.C.M. (CCH) 402; T.C.M. (RIA) 86420; September 8, 1986. Alan R. Harter, for the petitioner. Kenneth A. Burns, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioner's income tax for 1980 in the amount of $3,442.11 *190 and an addition to tax under section 6653(a) [1] in the amount of $172.11. The issues for decision are (1) whether respondent correctly determined petitioner's 1980 tip income; (2) whether petitioner is entitled to a gambling loss deduction; and (3) whether petitioner is liable under section 6653(a) for an addition to tax for negligence or the intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Petitioner's residence at the time he filed his petition was in Las Vegas, Nevada. He filed an income tax return for 1980 with the Internal Revenue Service Center, Ogden, Utah. During 1980, petitioner worked 2,071 hours as a craps dealer at the Maxim Hotel and Casino ("Maxim"). He received an hourly wage and was permitted to keep "tokes." [2] All tokes received during each 24 hours were pooled and divided among the dealers according *191 to hours worked. Petitioner reported $4,800 in toke income for 1980. Respondent determined that he received toke income of $18,431.90. Respondent examined the daily receipts reported in 1982 by several of Maxim's dealers. From these reports, respondent determined daily modes, or the total daily receipts most frequently reported by the dealers for each day (eight-hour shift) of the year. From the daily modes a monthly average, a daily average, and finally an hourly average was determined. After an adjustment for holiday pay, respondent arrived at an average hourly toke rate of 8.90 for Maxim dealers. By multiplying the average hourly rate times the 2,071 hours which petitioner worked in 1980, respondent determined petitioner's total 1980 toke receipts to be $18,431.90. OPINION Unreported Tip Income
Tokes constitute gross income under section 61. Catalano v. Commissioner,81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (5th Cir. 1984); Olk v. United States,536 F.2d 876 (9th Cir. 1976). *192 All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Section 6001. If a taxpayer receives income from tokes, the required records include an accurate and contemporaneous diary of such income.Section 1.6001-1(a), Income Tax Regs. Furthermore, under section 6053 and the regulations issued thereunder, an employee receiving tips or tokes is required to report the correct amount received to his or her employer. Petitioner testified that he recorded his 1980 daily toke receipts on a calendar, but at the time of trial he was unable to produce any record of the receipts because the calendar was no longer available. In the absence of sufficient records, respondent is authorized by section 446 to compute petitioner's tip income in accordance with any method which, in his opinion, clearly reflects such income. Sutherland v. Commissioner,32 T.C. 862 (1959). Respondent has great latitude in adopting a suitable method for reconstructing the taxpayer's income. Catalano v. Commissioner,supra;Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). It is sufficient if the reconstruction *193 is reasonable in light of all of the surrounding circumstances. Catalano v. Commissioner,supra;Schroeder v. Commissioner,40 T.C. 30, 33 (1963). Petitioner has the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner contends that respondent's calculation is erroneous in two respects. First, he argues that the issuance by respondent of a "no change" letter to a fellow dealer who reported toke income of $5,500 for 1980 indicates that the $4,800 reported by petitioner for 1980 was proper and respondent's calculation of $18,431.90 was clearly improper. Secondly, petitioner contends that the use by respondent of 1982 figures is not compatible with 1980, the year in question. Petitioner's reliance upon the "no change" letter issued to the fellow dealer is misplaced because such letter merely reflects a decision by respondent's agent to discontinue the audit of that particular dealer. It does not reflect a concession by respondent that the $5,500 in toke income reported by that dealer was in fact correct. The discontinuance of the audit could have *194 occurred for several reasons, one being that upon initial inquiry respondent learned that the dealer had met the minimum requirements of the toke compliance program which respondent had initiated in 1982. With regard to petitioner's contention that the 1982 figures used by respondent are not applicable to 1980 the year in question, it is noted that respondent's reconstruction of petitioner's toke income need only be reasonable in light of all the surrounding circumstances. Catalano v. Commissioner,supra:Schroeder v. Commissioner,supra. From the record before us it is apparent that respondent, in a thorough and professional manner, conducted an extensive examination of Maxim's toke records for 1982. The determination might have been more accurate if records for 1980 had been available but no such records were prepared for 1980 or 1981. Consequently, in the absence of more current figures, the use of the figures for 1982 is justified and obviously produces the most correct result possible under the surrounding circumstances. This is especially true where, as here, the record contains no evidence tending to indicate a change in the toke *195 rate between 1980 and 1982. See Catalano v. Commissioner,supra.Since petitioner has failed to meet his burden of proof respondent's determination with regard to petitioner's underreported toke income is sustained. Gambling Losses
Petitioner contends that a portion of the unreported toke income determined by respondent was attributable to wins from gambling transactions, and therefore, such wins should offset his wagering losses in the purported amount of $1,000. We disagree. The tokes were received in exchange for the services which petitioner performed for Maxim's patrons and were the direct result of his employment as a dealer rather than from gambling transactions. As such, the tokes constitute compensation for personal services and cannot be offset by gambling losses. Bevers v. Commissioner,26 T.C. 1218, 1220-1221 (1956). Addition to Tax
Respondent's determination that petitioner is liable for the addition to tax provided by section 6653(a) is presumptively correct and petitioner has the burden of proving that the determination is erroneous. Catalano v. Commissioner,supra; Rule 142(a). Petitioner *196 failed to maintain accurate records of his tip income as required by section 6001 and the regulations issued thereunder and the record before us contains no evidence which tends to justify his failure to do so. Therefore, respondent's determination with respect to the addition to tax provided by section 6653(a) is sustained. Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965). Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Casino chips given by patrons to a dealer either as direct tips or as bets made for the dealer.↩