WILLIAM E. McGAHA, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent McGaha v. Commissioner
Docket Nos. 15416-84, 18008-84, 20795-84.
United States Tax Court
T.C. Memo 1986-446; 1986 Tax Ct. Memo LEXIS 163; 52 T.C.M. (CCH) 517; T.C.M. (RIA) 86446; September 16, 1986. Michael H. Singer, for the petitioners in docket Nos. 15416-84 and 20795-84. Alan R. Harter, for the petitioner in docket No. 18008-84. Kenneth A. Burns, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, *164 Judge: In these consolidated cases respondent determined the following deficiencies and additions to tax under section 6653(a): [2]
Addition to Tax
Petitioner(s)
Year
Deficiency
Section 6653(a)
William E. and
1980
$3,766.00
$188.30
Linda McGaha
1981
6,996.00
349.80 plus 50% of
interest on an under-
payment of $6,996.00
Thomas Talmadge
1980
6,150.02
307.50
1981
5,499.00
274.95 plus 50% of
interest on an under-
payment of $5,499.00
William Thomas
1980
5,101.17
255.06
1981
4,806.00
240.30 plus 50% of
interest on under-
payment of $4,806.00
There are two issues for decision: (1) whether petitioners underreported their toke income as determined by respondent; and (2) whether petitioners are liable for additions to tax under section 6653(a) for negligence or the intentional disregard of rules and regulations. FINDINGS OF *165 FACT Some of the facts have been stipulated and are so found.The stipulation and exhibits attached thereto are incorporated herein by reference. All petitioners resided in Las Vegas, Nevada at the time their petitions were filed. During 1980 and 1981, petitioners William E. McGaha, Thomas Talmadge, and William Thomas (hereinafter referred to collectively as petitioners and individually by their last name) were employed as craps dealers at the Sands Hotel (Sands). In addition to hourly wages, petitioners were entitled to tokes, which are casino chips given by patrons to dealers or placed as bets for the dealers. At the Sands tokes were pooled and split equally by the four craps dealers working a table during any given shift. McGaha reported toke income of $6,171 for 1980 and $2,000 for 1981; Talmadge reported $5,483 for 1980 and $5,380 for 1981; and Thomas reported $7,167 for 1980 and $6,486 for 1981. [3]
During 1981, respondent began a toke compliance program designed to achieve voluntary compliance by casino dealers with the tip reporting requirements. Under this program, many *166 casino dealers including craps and twenty-one dealers at the Sands submitted to respondent monthly reports during 1982 which reflected their daily toke income. Using the 1982 reports submitted by craps and twenty-one dealers at the Sands, respondent computed average toke incomes per hour as follows: twenty-one dealers $15.25 per hour; day-shift (10:00 a.m. to 6:00 p.m.) craps dealers $8.38 per hour; swing-shift (6:00 p.m. to 2:00 a.m.) craps dealers $6.63 per hour; and graveyard-shift (2:00 a.m. to 10:00 a.m.) craps dealers $9.75 per hour. Using the average toke rate computed for twenty-one dealers of $15.25 per hour in 1982, respondent determined that McGaha had unreported tokes of $17,375.00 for 1980 and $22,546.50 for 1981, Talmadge had unreported tokes of $19,008.50 for 1980 and $17,037.50 for 1981 and Thomas had unreported tokes of $15,997.95 for 1980 and $15,321.50 for 1981. Respondent did not use the averages reported by the craps dealers at the Sands because (1) in contrast to craps dealers, who pooled tokes by tables for each shift, all blackjack dealers on each shift pooled tokes, and by using the blackjack rate it was easier for respondent to monitor compliance with *167 the program; (2) on the original reports respondent found that one day-shift craps dealer reported tokes of $12.96 per hour, which was well above the averages reported by the other craps dealers; and (3) respondent also found instances where craps dealers working at the same table and on the same shift and purportedly pooling and dividing tokes reported significantly different amounts. From June to December of 1981 the Sands was involved in an extensive remodeling program which reduced its volume of business to some extent. During 1980 some of its key personnel were transferred to another casino and this, too, had a small adverse effect on its business volume. During slow periods dealers were sometimes permitted to leave early even though they were paid for a full shift and the records of the Sands indicated they were present. OPINION (1) Toke Income
Tokes constitute compensation for services rendered and are includable in gross income under section 61. Catalano v. Commissioner,81 T.C. 8, 13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (5th Cir. 1984); Olk v. United States,536 F.2d 876 (9th Cir. 1976). *168 All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Section 6001. When a taxpayer receives income from tokes, the required records include an accurate and contemporaneous diary of such income. Section 1.6001-1(a), Income Tax Regs. Section 6053 and the regulations issued thereunder require the employee to also report the correct amount of the tokes to his employer. McGaha failed to produce any records at trial. Talmadge presented one sheet of paper on which a total for each month during 1980 and 1981 was handwritten on the front and back. In his petition Thomas stated that he did not keep any record of the tokes he received in 1980 and 1981. However, at trial, he produced monthly calendars on which a listing appeared of toke income for each day in 1980 and 1981.On this record we are unable to find that any petitioner maintained a contemporaneous or accurate record of his toke income for 1980 or 1981. In the absence of proper records, respondent is authorized by section 446 to compute the toke income of each petitioner by any method that, in the opinion of respondent, clearly reflects such income. Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965); *169 Sutherland v. Commissioner,32 T.C. 862 (1959). Respondent has great latitude in adopting a method for reconstructing the income, Giddio v. Commissioner,54 T.C. 1530, 1533 (1970), and the reconstruction need only be reasonable in light of all the surrounding circumstances, Schroeder v. Commissioner,40 T.C. 30, 33 (1963). We, however, can adjust respondent's determination if warranted by the circumstances or if the method proves inadequate in some respect. Meneguzzo v. Commissioner,supra at 835. Generally, a taxpayer has the burden of going forward with the evidence and the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners, relying on Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), contend that respondent's determination is "arbitrary and capricious." We cannot agree. Although as discussed below, we have found that respondent's determination is not entirely satisfactory, it is not without foundation and hence is not arbitrary and capricious. Therefore, the burden of going forward *170 remains upon petitioners. See Weimerskirch v. Commissioner,supra at 361. Finally, petitioners contend that respondent's determination is erroneous in the following respects: (1) respondent should have used the average toke rate of $6.63 per hour which he determined for craps dealers working the swing-shift; (2) the toke rate for twenty-one dealers of $15.25 is excessive because craps dealers make less tips than twenty-one dealers; (3) 1980 was a slow year for the Sands as compared to 1982 because several key personnel were transferred during 1980 to another hotel; (4) 1981 as compared to 1982 also was a slow year because the Sands was being remodeled from June to December of 1981; and (5) petitioners did not actually work all the hours for which they received wages. [4]
From the record before us we are convinced that adjustments should be made to respondent's determination not only because the toke rate of $15.25 per hour figure is too high under all the surrounding circumstances, but also because there is some merit to each of the other assertions *171 made by petitioners. Consequently, from the record as a whole and bearing heavily against petitioners because of their failure to maintain accurate records, we conclude that the toke rate should be reduced to $11.00 per hour. (2) Additions to Tax
Since petitioners failed to make and retain accurate records of their toke income, and since the record contains no evidence which tends to justify their failure to do so, respondent's determination with respect to the addition to tax is sustained in each case. Meneguzzo v. Commissioner,43 T.C. 824, 836 (1965). Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Thomas Talmadge, docket No. 18008-84; and William Thomas, docket No. 29795-84.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
3. Thomas reported exactly the same total of wages and tokes in 1980 and 1981, i.e., $15,075.↩
4. On slow nights they were sometimes permitted to leave early, but were still paid for a full eight-hour shift.↩