Wendell OLK, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 75–2181.

United States Court of Appeals,
Ninth Circuit.

June 1, 1976.

Rehearing Denied July 14, 1976.

Michael L. Paup, Atty. (argued), of Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

George Bouchard (argued), Laguna Hills, Cal., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges, and VAN PELT,* District Judge.

SNEED, Circuit Judge:

This is a suit to obtain a refund of federal income taxes. The issue is whether monies, called "tokes" in the relevant trade, received by the taxpayer, a craps dealer employed by Las Vegas casinos, constitute taxable income or gifts within the meaning of section 102(a), Int.Rev.Code of 1954. The taxpayer insists "tokes" are non-taxable gifts. If he is right, he is entitled to the refund for which this suit was brought. The trial court in a trial without a jury held that "tokes" were gifts. The Government appealed and we reverse and hold that "tokes" are taxable income.

---

* Honorable Robert Van Pelt, United States District Judge for the District of Nebraska, sitting by designation.

## I. *The Facts.*

There is no dispute about the basic facts which explain the setting in which "tokes" are paid and received. The district court's finding with respect to such facts which we accept are, in part, as follows:

In 1971 plaintiff was employed as a craps dealer in two Las Vegas gambling casinos, the Horseshoe Club and the Sahara Hotel. The basic services performed by plaintiff and other dealers were described at trial. There are four persons involved in the operation of the game, a boxman and three dealers. One of the three dealers, the stickman, calls the roll of the dice and then collects them for the next shooter. The other two dealers collect losing bets and pay off winning bets under the supervision of the boxman. The boxman is the casino employee charged with direct supervision of the dealers and the play at one particular table. He in turn is supervised by the pit boss who is responsible for several tables. The dealers also make change, advise the boxman when a player would like a drink and answer basic questions about the game for the players.

Dealers are forbidden to fraternize or engage in unnecessary conversation with the casino patrons, and must remain in separate areas while on their breaks. Dealers must treat all patrons equally, and any attempt to provide special service to a patron is grounds for termination.

At times, players will give money to the dealers or place bets for them. The witnesses testified that most casinos do not allow boxmen to receive money from patrons because of their supervisory positions, although some do permit this. The pit bosses are not permitted to receive anything from patrons because they are in a position in which they can insure that a patron receives some special service or treatment.

The money or tokes are combined by the four dealers and split equally at the end of each shift so that a dealer will get his share of the tokes received even while he is taking his break. Uncontradicted testimony indicated that a dealer would be terminated if he kept a toke rather than placed it in the common fund.

Casino management either required the dealers to pool and divide tokes or encouraged them to do so. Although the practice is tolerated by management, it is not encouraged since tokes represent money that players are not wagering and thus cannot be won by the casino. Plaintiff received about $10 per day as his share of tokes at the Horseshoe Club and an average of $20 per day in tokes at the Sahara. (footnotes omitted).

Additional findings of fact by the district court are that the taxpayer worked as a stickman and dealer and at all times was under the supervision of the boxman who in turn was supervised by the pit boss. Also the district court found that patrons sometimes give money to dealers, other players or mere spectators at the game, but that between 90–95% of the patrons give nothing to a dealer. No obligation on the part of the patron exists to give to a dealer and "dealers perform no service for patrons which a patron would normally find compensable." Another finding is that there exists "no direct relation between services performed for management by a dealer and benefit or detriment to the patron."

There then follows two final "findings of fact" which taken together constitute the heart of the controversy before us. These are as follows:

17. The tokes are given to dealers as a result of impulsive generosity or superstition on the part of players, and not as a form of compensation for services.

18. Tokes are the result of detached and disinterested generosity on the part of a small number of patrons.

These two findings, together with the others set out above, bear the unmistakable imprint of *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1959), particularly that portion of the opinion which reads as follows:

The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but

in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 730 [49 S.Ct. 499, 504, 73 L.Ed. 918, 928]. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, *Bogardus v. Commissioner*, 302 U.S. 34, 41 [58 S.Ct. 61, 65, 82 L.Ed. 32, 37], it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson v. United States*, 343 U.S. 711, 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237, 1240]. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner of Internal Revenue v. LoBue*, 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142, 1147]; "out of affection, respect, admiration, charity or like impulses." *Robertson v. United States, supra*, 343 U.S. at page 714 [72 S.Ct. 904 at page 996, 96 L.Ed. at page 1240]. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." *Bogardus v. Commissioner*, 302 U.S. 34, 43 [58 S.Ct. 61, 65, 82 L.Ed. 32]. "What controls is the intention with which payment, however voluntary, has been made." *Id.*, 302 U.S. at page 45 [58 S.Ct. 61 at page 66, 82 L.Ed. at page 39] (dissenting opinion).

*Id.* at 285–86, 80 S.Ct. at 1196, 4 L.Ed. at 1224–25 (footnotes omitted).

II. *Finding Number 18 Is A Conclusion of Law.*

The position of the taxpayer is simple. The above findings conform to the meaning of gifts as used in section 102 of the Code. *Duberstein* further teaches, the taxpayer asserts, that whether a receipt qualified as a non-taxable gift is "basically one of fact," *id.* at 290, 80 S.Ct. at 1199, 4 L.Ed.2d at 1228 and appellate review of such findings is restricted to determining whether they are clearly erroneous. Because none of the recited findings are clearly erroneous, concludes the taxpayer, the judgment of the trial court must be affirmed.

■ We could not escape this logic were we prepared to accept as a "finding of fact" the trial court's finding number 18. We reject the trial court's characterization. The conclusion that tokes "are the result of detached and disinterested generosity" on the part of those patrons who engage in the practice of toking is a conclusion of law, not a finding of fact. Finding number 17, on the other hand, which establishes that tokes are given as the result of impulsive generosity or superstition on the part of the players is a finding of fact to which we are bound unless it is "clearly erroneous" which it is not.

■ The distinction is between a finding of the dominant reason that explains the player's action in making the transfer and the determination that such dominant reason requires treatment of the receipt as a gift. Finding number 17 is addressed to the former while number 18 the latter. A finding regarding the basic facts, *i. e.*, the circumstances and setting within which tokes are paid, and the dominant reason for such payments are findings of fact, our review of which is restricted by the clearly erroneous standard. Whether the dominant reason justifies exclusion from gross income under section 102 as interpreted by *Duberstein* is a matter of law. Finding number 18 is a determination that the dominant reason for the player's action, as found in number 17, justifies exclusion. This constitutes an application of the statute to the facts. Whether the application is proper is, of course, a question of law.

Our view is supported by Judge Sobeloff's opinion in *Poyner v. Commissioner*,

301 F.2d 287 (4th Cir. 1962). He drew a line between the basic facts, the actual happenings, and a finding of the "dominant reason" for the payments on the one hand and the determination whether the "dominant reason" justified exclusion from gross income on the other. The latter requires an application of the law to the facts and with respect to it the appellate court may make an independent judgment. *Id.* at 290.

This is a sensible approach. Otherwise an appellate court's inescapable duty of appellate review in this type of case would be all but foreclosed by a finding, such as in number 18, in which the resolution of the ultimate legal issue was disguised as a finding of fact. The error in insisting that findings numbers 17 and 18 are both findings of fact with respect to the "dominant reason" is revealed when the language of finding number 18 is compared with *Duberstein's* statement, "A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' *Commissioner of Internal Revenue v. LoBue,* 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142]; 'out of affection, respect, admiration, charity or like impulses.'" 363 U.S. at 285, 80 S.Ct. at 1197. Their similarity is not coincidental and demonstrates that finding number 18 is but an application of the statutory definition of a gift to all previous findings of fact including finding number 17. Number 18 merely characterizes all previous findings in a manner that makes classification of the receipt as a gift inevitable. "Detached and disinterested generosity" are, by reason of *Duberstein*, the operative words of the statutory definition of a gift. To apply them to facts, including a finding with respect to "dominant motive" is to apply the statute to such facts. It is a conclusion of law.

III.  *Finding Number 18 and Other Conclusions of Law Based Thereon Are Erroneous.*

■  Freed of the restraint of the "clearly erroneous" standard, we are convinced that finding number 18 and all derivative conclusions of law are wrong. "Impulsive generosity or superstition on the part of the players" we accept as the dominant motive. In the context of gambling in casinos open to the public such a motive is quite understandable. However, our understanding also requires us to acknowledge that payments so motivated are not acts of "detached or disinterested generosity." Quite the opposite is true. Tribute to the gods of fortune which it is hoped will be returned bounteously soon can only be described as an "involved and intensely interested" act.

Moreover, in applying the statute to the findings of fact, we are not permitted to ignore those findings which strongly suggest that tokes in the hands of the ultimate recipients are viewed as a receipt indistinguishable, except for erroneously anticipated tax differences, from wages. The regularity of the flow, the equal division of the receipts, and the daily amount received indicate that a dealer acting reasonably would come to regard such receipts as a form of compensation for his services. The manner in which a dealer may regard tokes is, of course, not the touchstone for determining whether the receipt is excludable from gross income. It is, however, a reasonable and relevant inference well-grounded in the findings of fact.

Our view of the law is consistent with the trend of authorities in the area of commercial gratuities as well as with the only decision squarely in point, *Lawrence E. Bevers,* 26 T.C. 1218 (1956), and this Circuit's view of tips as revealed in *Roberts v. Commissioner,* 176 F.2d 221 (9th Cir. 1949). Generalizations are treacherous but not without utility. One such is that receipts by taxpayers engaged in rendering services contributed by those with whom the taxpayers have some personal or functional contact in the course of the performance of the services are taxable income when in conformity with the practices of the area and easily valued. Tokes, like tips, meet these conditions. That is enough.

The taxpayer is not entitled to the refund he seeks.

REVERSED.