THOMAS TALMADGE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Talmadge v. Commissioner
Docket No. 7098-78.
United States Tax Court
T.C. Memo 1983-268; 1983 Tax Ct. Memo LEXIS 519; 46 T.C.M. (CCH) 159; T.C.M. (RIA) 83268; May 16, 1983. *519 Alan R. Harter, for the petitioner. Ronald D. Dalrymple and Francis J. Elward, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's Motion for Summary Judgment filed herein.After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
*520 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment, filed on February 10, 1983, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent, in his notice of deficiency issued to petitioner on March 24, 1978 determined a deficiency in petitioner's Federal income tax for the taxable calendar years 1972 and 1973 in the respective amounts of $1,101 and $1,261. The adjustments determined by respondent in his deficiency notice are for unreported tip ("toke") income received by petitioner in 1972 and 1973 in the amounts of $4,585 and $5,322, respectively. Petitioner timely filed his petition on June 26, 1978 and respondent filed his answer thereto on August 11, 1978. Thus, the pleadings are closed. Respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 38, and 121. When respondent's good faith attempts to make arrangements with petitioner's counsel for informal consultations or communications proved unsuccessful, [3] he, not desiring to rest *521 on the pleadings alone, on August 20, 1983, served a 61 paragraph Request for Admissions on petitioner's counsel. [4] Petitioner's counsel at no time served written answers upon respondent nor did he file an original of such answers with the Court. Rule 90(c). Hence, each matter contained in respondent's request for admissions is deemed admitted and conclusively established. [5]
*522 The following findings of fact are based upon the record as a whole, the allegations of respondent's answer admitting allegations in the petition, the matters deemed admitted with respect to respondent's request for admissions, and exhibits attached to respondent's motion. FINDINGS OF FACT Petitioner's address was 3648 Anthony Drive, Las Vegas, Nevada on the date his petition was filed. He filed individual 1972 and 1973 Federal income tax returns with the Internal Revenue Service. During 1972 and 1973 petitioner was employed as a craps dealer and was a member of a "craps crew" at the Sands Hotel and Casino ("Sands") and Flamingo Hotel and Casino ("Flamingo"), both of which are located in Las Vegas, Nevada. A craps crews consisted of four dealers who manned one table. Three of the dealers worked while the other was on break on a rotational basis. The crews rotated tables periodically, to equalize the work and tokes received, between the more desirable and busier tables locations and those less desirable and therefore less busy. Petitioner was only required, by his employer, to work 5 days out of any consecutive 7-day period during 1972 and 1973. In the course of his *523 employment petitioner received tokes from patrons of Sands and the Flamingo. In accordance with house rules these tokes were routinely pooled by petitioner and other craps dealers on his crew, by placing said tokes in a common toke box for his particular crew, before leaving the area of the gaming tables on a break or at the end of a shift. The total amount so pooled was divided equally at the end of each 8-hour shift among the craps dealers on that particular crew who were on duty during that 8-hour period. Under house rules some provision was made for allowing a share of the tokes for dealers who were unable to work due to illness. During 1972 and 1973 petitioner received his equal share of such pooled tokes. Petitioner, in 1972 and 1973, did not maintain a written diary, log, worksheet, or other record, made at or near the time he received tokes, which set forth the date, amount of tokes received and amounts he may have expended as gratuities to co-workers. Players (patrons) at Sands and the Flamingo did from time to time place bets on petitioner's behalf.Such bets remained under the control of the patron until the winnings, if any, were actually given to petitioner. The *524 patron was free to take back the winning bet if he so desired. The Nevada State Gaming Authority regards a bet made by a patron for petitioner as a wager made by and on behalf of the patron. Petitioner was forbidden from gambling or placing bets at the table he was working. Under house rules any winning bets received by petitioner were pooled and distributed. Neither petitioner nor the toke pool was required to reimburse a patron who had placed a losing bet on petitioner's behalf. In both 1972 and 1973 petitioner gambled in his individual and private capacity during his off duty time. He maintained no records which accurately reflected the date, amount of bets and amounts won and lost. Petitioner was paid a salary by his employers in both 1972 and 1973. The salary was in addition to the tokes he received in those years. In 1972 he was paid a salary by Sands for 39 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts did not exceed 17 for 1972. [6] During 1972 he was paid a salary by Flamingo for 155 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts did not exceed 16 for 1972. [7] In 1973 petitioner *525 was paid a salary by Sands for 218 8-hour shifts. He was paid for 8-hour shifts when he did not actually work, such shifts did not exceed 20 for 1973. [8] Petitioner reported the salary he received from his employers on his 1972 and 1973 returns. Petitioner is required by law to report the toke income he receives to his employer. During 1972 and 1973 he reported to his employers that he received toke income in the respective amounts of $95 and $1,538, [9] which amounts were reported on his 1972 and 1973 returns. The foregoing amounts were based on estimates. No additional toke income was reported on those returns. The amount of toke income received by petitioner in 1972 *526 averaged not less than $30.00 for each 8-hour shift he actually worked and for 1973 it averaged not less than $35.00 for each 8-hour shift actually worked. Petitioner received additional toke income in 1972 and 1973 in the respective amounts of $4,585 and $5,322, which he did not report on his Federal income tax returns filed for those years. Petitioner does not have in his possession or under his control any documentary evidence to support the allegations in his petition that respondent's determinations are arbitrary. OPINION It is well settled that tokes are not gifts but taxable income which must be included in a taxpayer's gross income. Olk v. United States,536 F.2d 876 (9th Cir. 1976); [10]Clover v. Commissioner,T.C. Memo. 1983-181; Foreman v. Commissioner,T.C. Memo. 1983-130; Parker v. Commissioner,T.C. Memo. 1983-87; Kurimai v. Commissioner,T.C. Memo. 1983-86; Parker v. Commissioner,T.C. Memo. 1983-85; Randolph v. Commissioner,T.C. Memo. 1983-84; Williams v. Commissioner, 1980-494. [11] It is conclusively established in this record *527 that petitioner received unreported toke income in 1972 and 1973 in the respective amounts of $4,585 and $5,322. Petitioner's contention that respondent's determinations are arbitrary is baseless. Here, petitioner kept no records which would accurately reflect the toke income which he received in 1972 and 1973. In such circumstance, the Commissioner may, in his notice of deficiency, make a determination based upon any reasonable method where a taxpayer refuses to produce his records or where those records are inadequately maintained. Holland v. United States,348 U.S. 121 (1954); Merritt v. Commissioner,301 F.2d 484, 486 (5th Cir. 1962); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3rd Cir. 1977); Giddio v. Commissioner,54 T.C. 1530 (1970); Meneguzzo v. Commissioner,43 T.C. 824 (1965). *528 [12]
Respondent's determinations herein are presumptively correct and the burden is on petitioner to establish that they are incorrect or arbitrary. Welch v. Helvering,290 U.S. 111 (1933); Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978); Rule 142(a). Petitioner here totally failed to show that those determinations are incorrect or arbitrary. Rule 121(b) provides that a motion for summary judgment shall be granted if the "pleadings * * * admissions and any other acceptable materials, together with the affidavits * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *". [Emphasis supplied.] Here, petitioner has refused to submit any information which contradicts respondent's factual determinations. *529 On the basis of the pleadings, those matters deemed admitted in respondent's request for admissions, the exhibits attached to respondent's motion (which include copies of the 1972 and 1973 returns and a full copy of the notice of deficiency), and respondent's affidavit, respondent has amply demonstrated to our satisfaction that there is no genuine issue as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. Hence, summary judgment is a proper procedure for disposition of this case. Respondent's Motion for Summary Judgment will be granted.
An appropriate order and decision will be entered.
Footnotes
1. Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule. The parties were afforded a full opportunity to present their views on the law at the hearing at Washington, D.C. on April 27, 1983. No appearance was made by or on behalf of petitioner nor was a response to respondent's motion filed, albeit a copy thereof and a copy of respondent's affidavit were served on petitioner's counsel on February 17, 1983 and a copy of the Court's Order dated March 17, 1983 (calendaring respondent's motion for hearing) were served on petitioner's counsel on March 21, 1983. See Rule 50(c), Tax Court Rules of Practice and Procedure.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 4. The original of that request was filed with the Court on August 27, 1982. Rule 90(b). ↩
5. See Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Rules 90(c) and (e). See also McKinnon v. Commissioner,T.C. Memo. 1982-229; Knudson v. Commissioner,T.C. Memo. 1982-179; Oaks v. Commissioner,T.C. Memo. 1981-605; Wallace v. Commissioner,T.C. Memo. 1981-274; Myers v. Commissioner,T.C. Memo. 1980-549; Edelson v. Commissioner,T.C. Memo. 1979-431; Saba v. Commissioner,T.C. Memo. 1979-397; Bassett v. Commissioner,T.C. Memo. 1979-14↩.
6. The 17 shifts plus 5 more were not included in respondent's determination of additional toke income received by petitioner in 1972. ↩
7. The 16 shifts were not included in respondent's determination of additional toke income received by petitioner in 1972. ↩
8. The 20 shifts plus 2 more were not included in respondent's determination of additional toke income received by petitioner in 1973.↩
9. These amounts were reflected on Forms W-2 issued by the employers and were included in gross wages.↩
10. We observe that venue on appeal of this case would lie in the United States Court of Appeals for the Ninth Circuit. ↩
11. See also, Foltz v. Commissioner,T.C. Memo. 1982-179, and Malone v. Commissioner,T.C. Memo. 1982-325↩.
12. The method used here by respondent was clearly reasonable. See Williams v. Commissioner,T.C. Memo. 1980-494↩, where on facts virtually indistinguishable from those we consider herein, this Court stated--"We conclude that 'all tokes' received by petitioners, whether directly from the player or through a winning bet, are taxable gratuities".