WILLIAM P. SEFFEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Seffel v. Commissioner
Docket No. 30085-88
United States Tax Court
T.C. Memo 1990-531; 1990 Tax Ct. Memo LEXIS 585; 60 T.C.M. (CCH) 983; T.C.M. (RIA) 90531; October 15, 1990, Filed Decision will be entered for the Respondent. John E. McCauley, for the petitioner. Sandra Hayes, for the respondent. GOFFE, Judge. GOFFE
MEMORANDUM OF FINDINGS OF FACT AND OPINION The Commissioner determined the following deficiency and additions to petitioner's income tax: Additions to Tax
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
1985
$ 2,186 $ 109 *
The issues for decision are (1) whether the "toke" [2] income received by petitioner is subject to tax and, if so, (2) whether the Commissioner correctly determined the correct amount of toke income, and (3) whether petitioner is liable under section *587 6653(a) for an addition to tax for negligence or the intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. Petitioner resided in Las Vegas, Nevada, at the time of the filing of his petition. He filed an income tax return for 1985 with the Internal Revenue Service Center, Ogden, Utah. During 1985, petitioner was paid an hourly rate for 2,007 hours as a blackjack or "21" dealer at the Dunes Hotel in Las Vegas, of which 160 hours represent vacation hours and the remaining 1,847 hours were for actual time spent at the casino. He received an hourly wage and tokes based upon the number of hours he worked on his particular shift. Periodically, throughout a dealer's shift, the tokes were collected from the table at which the dealer worked and dropped into *588 a toke box located in the gaming area. The toke boxes were then gathered and opened by a toke committee which added up the contents and divided the total among the dealers working during that shift. All tokes received during each 24 hours were thus pooled and divided among the dealers according to the hours worked. The blackjack dealers received tokes even when vacationing away from the casino. Upon deciding the amount each dealer should receive, the toke committee converted the casino chip equivalent into cash and placed this amount into envelopes. The dealer's name was put on the envelope and the envelope was available to that employee at the completion of the dealer's shift. Petitioner reported $ 10,048.49 in taxable wages for 1985 and $ 14,500 in toke income for the same period. Petitioner did not keep accurate records to reflect the amount of toke income he received in 1985. The Commissioner calculated petitioner's toke income by examining the daily payroll records submitted by other dealers from the Dunes casino. Interviews were also conducted with payroll and accounting personnel, the casino manager, and interested dealers who came to a meeting to discuss their tip *589 pooling procedure for purposes of an industry-wide investigation of the income activities of casino dealers. Monthly calendars were sent to dealers on a quarterly basis which provided a space for the dealers to record their daily toke income. The dealers then submitted the toke calendars to the Internal Revenue Service Center at which point the data was entered into a computer. The computer program analyzed all the daily amounts entered and selected the mode (the most frequently reoccurring number) for each day. The daily modes were then averaged to determine a monthly average, and the monthly daily averages were averaged to determine the annual daily average. The annual daily average was divided by 8 hours, the normal length of a shift, to arrive at an hourly toke rate. After an adjustment for "days off," the Commissioner arrived at an average hourly toke rate of $ 11.25 for blackjack dealers at the Dunes casino. By multiplying the average hourly toke rate times the 2,007 hours petitioner worked in 1985, the Commissioner arrived at petitioner's total toke income of $ 22,578.75. As a check against the general toke income formula, the Commissioner used petitioner's actual *590 daily time cards to calculate the toke income based on petitioner's working shifts at the casino rather than the average hourly rate. Using this formula, the Commissioner determined petitioner's total toke income to be $ 22,589.75, which was $ 11.00 higher than the amount reached using the $ 11.25 per hour average rate. The difference between petitioner's toke income of $ 14,500 which he reported for the taxable year 1985 and the Commissioner's reconstructed toke income of $ 22,578.75 resulted in the understatement for which the statutory notice of deficiency was issued. OPINION Tokes constitute gross income under section 61. Olk v. United States, 536 F.2d 876 (9th Cir. 1976), cert. denied 429 U.S. 920 (1976); Catalano v. Commissioner, 81 T.C. 8, 13 (1983), affd. without published opinion sub. nom. Knoll v. Commissioner, 735 F.2d 1370 (5th Cir. 1984). Petitioner initially argues that this Court is not bound by this holding in the Olk v. United States, supra, decision because Olk was decided by the Court of Appeals for the Ninth Circuit and petitioner's case was tried before the Court *591 in Albuquerque, New Mexico, and an appeal, therefore, lies within the jurisdiction of the Court of Appeals for the Tenth Circuit. The Court explained to petitioner at trial that, although designation for trial may be at any location, an appeal from a decision of the U.S. Tax Court is reviewable only by the Court of Appeals for the circuit where petitioner's legal residence is located at the time the petition is filed. Sec. 7482(b)(1)(A). Petitioner's legal residence is Las Vegas, Nevada, which is located within the jurisdiction of the Court of Appeals for the Ninth Circuit. Golsen v. Commissioner, 445 F.2d 985 (10th Cir. 1971), established the doctrine that when a case at bar is on all fours with a case previously decided in the circuit where an appeal lies, this Court will follow the law of that circuit. Thus, we must decline petitioner's invitation to revisit the issue of whether tokes are income or gifts. We follow the Olk v. Commissioner, supra, decision from the Ninth Circuit Court of Appeals, wherein an appeal from the present decision lies and conclude that tokes are considered income under the Internal Revenue Code. Also along these lines, *592 petitioner raises an issue not specifically addressed in the Olk case. The question is whether the tokes received and included in his income for the 160 hours during 1985 during which time he was on vacation were truly gifts. Petitioner argues that he was not at the casino during his vacation, hence he could not have possibly have caused casino patrons to tip him. Petitioner contends that, unlike the card dealer in Olk, he could not influence the customers of the casino because he was not physically present. As a result, he argues that the toke income for the 160 hours must be construed as gifts to him because he did not do anything to earn it. Petitioner ignores the reasoning of Olk v. United States, supra, which sets forth the standards for a gift under the Internal Revenue Code in the gambling context. The donor's generosity must be detached and disinterested. Olk v. United States, supra at 879, citing Commissioner v. Duberstein, 363 U.S. 278 (1960). As a matter of law, it was held that the intent of casino patrons is anything but detached and disinterested. The tokes by the customers were for the superstitious *593 purpose of securing good luck. A "tribute to the gods of fortune which it is hoped will be returned bounteously soon can only be described as an 'involved and intensely interested' act." Olk v. United States, supra at 879. The dealers in the casino agreed to pool the tokes and divide them. The individual intent of the customer of the casino as to each dealer is, therefore, immaterial. Likewise, absence from the casino is immaterial. Petitioner was entitled to share in the tokes during his vacation time. Petitioner also argues that card dealers at casinos were singled out for unfair treatment because the Internal Revenue Service has been overbearing and "gone wholeheartedly after" them. We interpret this argument to mean that petitioner feels he was arbitrarily selected for the audit. Also, petitioner testified that, when he visited Internal Revenue agents, he requested a copy of the law imposing a tax upon tokes but that the agents did not produce this for him. These arguments ask us to go behind the statutory notice. The general rule is that this Court will not examine the motivation or the evidence respondent relies upon in issuing a statutory notice. *594 Shriver v. Commissioner, 85 T.C. 1, 3 (1985); Riland v. Commissioner, 79 T.C. 185, 201 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). The rare and narrow exceptions to this general rule are not applicable to this case. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Jackson v. Commissioner, 73 T.C. 394, 400 (1979). Petitioner also contends that the toke committee, which converted the toke income from casino chips into cash, and distributed the earnings among the employees working that shift, was made up of casino employees, not Government employees, and that the committee may not have accurately paid petitioner the amount of tokes he was supposed to receive. However, it is up to petitioner, at the time he was being paid, to insure that errors made in the toke committee's calculation were promptly brought to its attention. The Federal Government plays no role here. Moreover, petitioner bears the burden of proving that the toke Committee acted improperly. Petitioner also argues that the tokes, which are plastic casino chips, are not legal tender in the United *595 States and are, therefore, not susceptible to Federal income tax. This argument does not reflect the financial reality of petitioner's situation. The chips received as tokes were converted at the end of the dealer's shift into U.S. currency and placed into envelopes available for that employee's immediate use. While there may have been some negligible amount of time between the moment a patron gives the dealer a chip and the end of the dealer's shift when the toke is converted to cash, the chip merely represents an enforceable debt owed to the holder by the casino. Such debts, and the casino chips in which they take their form, are income to petitioner when received because it is compensation for petitioner's services as a blackjack card dealer. Sec. 61(a)(1). Finally, petitioner asserts that respondent incorrectly stated that petitioner did not participate in a tax amnesty program. The record is unclear as to the details of this amnesty program, but we gather that it involved the exemption from return audits for card dealers at Las Vegas, Nevada area casinos during their 1980 and 1981 taxable years, provided they met certain administerial requirements, such as detailed recordkeeping, *596 between 1982 and 1984. Because the program was not in effect and had no relation whatsoever to petitioner's tax deficiency in 1985, we reject petitioner's concerns as being immaterial to the current issues before this Court. We have given full consideration to petitioner's arguments and must conclude that the tokes he received are taxable income. As a result, he was required to record and report that income in order to accurately calculate his correct tax liability. Sec. 6001. When a taxpayer receives income from tokes, required records include a contemporaneous diary of such income. Sec. 1.6001-1(a), Income Tax Regs. Petitioner did not keep records which reflect his toke income, or the envelopes containing the cash after the tokes were converted. In the absence of sufficient records, respondent is authorized by section 446(b) to compute petitioner's toke income in accordance with any method which, in his opinion, clearly reflects such income. Sutherland v. Commissioner, 32 T.C. 862 (1959). [3] Respondent has great latitude in adopting a suitable method for reconstructing the taxpayer's income. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). *597 The method of reconstruction is suitable if it is reasonable in light of all the surrounding circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Petitioner has the burden of proving that respondent's determination is erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). The method of income reconstruction employed in this case has been before this Court and approved in Farmakis v. Commissioner, T.C. Memo. 1986-419, and McGaha v. Commissioner, T.C. Memo. 1986-446. Petitioner did not present any figures or records to challenge respondent's determination. The payment envelopes provided by the casino were not produced, nor did petitioner present any listing of amounts received, calendars, or diaries of his income for 1985 or any evidence of deposits into his checking account which he indicated that he made. To the contrary, in all but one instance, petitioner *598 simply highlighted alleged errors in respondent's statistical data, without providing a reason why the information was wrong. In the one matter where petitioner provided a substantive argument as to why respondent's assumptions are incorrect, petitioner noted that when only two numbers were available to respondent to represent toke income during a shift (only two dealers submitted a calendar for that particular time period), respondent's computer was programmed to pick the higher of the two numbers. Petitioner states that the law of averaging requires the blending of two or more numbers, not just the higher of the two available numbers. This contention is misplaced. As respondent's toke recordkeeper explained, it is much more likely that the blackjack dealers submitting calendars understated the amount of toke income received. Therefore, selection of the higher number submitted is valid because it is probably the true amount received by the dealer. Understatement in this area has, unfortunately, been more the norm. Given the choice, the computer was properly programmed to use the higher amount in the overall calculation of the toke average income. We find no error in the method *599 used to calculate the toke income determined by the Commissioner. Because petitioner has failed to meet his burden of proof, respondent's determination with regard to the underreported toke income is sustained. Respondent's determination that petitioner is liable for the addition to tax provided by section 6653(a) is presumptively correct and petitioner has the burden of proving that the determination is erroneous. Catalano v. Commissioner, supra; Enoch v. Commissioner, 57 T.C. 781 (1972); Rule 142(a). Petitioner has failed to maintain accurate records of his tip income as required by section 6001 and the regulations issued thereunder. The record clearly indicates that petitioner was aware of his recordkeeping duties and simply chose to disregard them. Therefore, respondent's determination with respect to the addition to tax provided by section 6653(a) is sustained. Meneguzzo v. Commissioner, 43 T.C. 824, 836 (1965). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all rule references are to the Rules of Practice and Procedure of this Court, and all section numbers refer to the Internal Revenue Code in effect for 1985.↩
*. 50 percent of the interest due on the underpayment of $ 2,186 attributable to negligence.↩
2. "Tokes" are casino chips given by patrons to a dealer either as direct tips or as bets made for the dealer.↩
3. Farkas v. Commissioner, T.C. Memo. 1986-420↩.