VERNON J. WILLIAMS AND SUSAN J. WILLIAMS, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Williams v. Commissioner
Docket Nos. 9843-74, 1173-75, 1607-75, 2606-75, 2755-75, 4536-75, 10220-77, 10222-77, 10226-77, 10229-77, 11987-77, 11992-77.
United States Tax Court
T.C. Memo 1980-494; 1980 Tax Ct. Memo LEXIS 92; 41 T.C.M. (CCH) 312; T.C.M. (RIA) 80494; October 30, 1980, Filed Alan R. Harter, for petitioners in Docket Nos. 9843-74, 1607-75, 2606-75, 4536-75, 10220-77, 10222-77, 10226-77, 10229-77, 11987-77, 11992-77. George J. Vlahos, Docket No. 1173-75, pro se. Marko Kustudia, Docket No. 2755-75, pro se. Dennis C. DeBerry and Charles W. Jeglikowski, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge James M. Gussis *93 pursuant to the provisions of section 7456(c), Internal Revenue Code of 1954, [2] and Rules 180 and 181 of the Tax Court Rules of Practice and Procedures.[3] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined the following income tax deficiencies and additions to tax: Income Tax
Additions to
Docket No.
Petitioners
Year
Deficiency
Tax (sec. 6653(a))
9843-74
Vernon J. & Susan
1972
$ 2,347.24
$ 117.36
J. Williams
1173-75
George J. Vlahos
1972
2.470.87
123.54
1607-75
Keith L. Vanstrom
1972
2,650.25
132.51
2606-75
Manuel E. & Aida
1972
2,446.80
122.34
Paneda
2755-75
Marko & Idonna
1972
2,150.00
107.50
Kustudia
4536-75
Tony J. Zarro
1972
1,837.45
91.87
10220-77
Charles Hennessey
1972
2,394.67
119.73
10222-77
Basil Galanis
1972
3,521.24
176.06
10226-77
Richard Monterosso
1972
2,442.96
122.15
10229-77
Louis A. & Miriam
1972
1,558.55
77.93
Amelburu
11987-77
John & Deberah
1972
2,201.91
Ayoub
1973
2,558.00
11992-77
Ben & Victoria
1972
2,379.25
Bravo
1973
2,313.40
*94 The issues in these consolidated cases are (1) whether the petitioners, who were employed as blackjack ("21") dealers, understated the amount of "toke" (tip) income received by them and whether such income resulted from gambling transactions; and (2) whether petitioners (as designated above) are liable for the negligence penalty under section 6653(a). FINDINGS OF FACT Some of the facts were stipulated and they are so found. The petitioners in the cases here involved were residents of Las Vegas, Nevada at the time their respective petitions in these cases were filed. All of the petitioners herein filed Federal income tax returns for the applicable years in issue. During the years involved petitioners [3] herein were employed as blackjack dealers at Las Vegas International Hotel, Inc. (Hilton) or at the Summa Corp. - Sands Hotel Casino (Sands). Petitioners generally worked an eight-hour shift and were paid regular salaries. In addition to the salaries petitioners received additional income ("tokes") from the players at the blackjack tables. Petitioners reported salaries and additional "toke" income during the period involved as follows: *95 HILTON Additional
Shifts
Petitioner
Year
W-2 income
toke income
worked
Vernon J.
1972
$10,161.53
$1,553
265
Williams
George J.
1972
9,622.51
1,231
250
Vlahos
Keith L.
1972
9,570.26
1,310
256
Vanstrom
Manuel E.
1972
9,610.50
1,293
256
Paneda
Marko
1972
9,685.25
1,410
256
Kustudia
Tony J.
1972
8,901.00
1,386
210
Zarro
Charles M.
1972
8,932.94
1,408
246
Hennessey
Richard
1972
9,350.00
1,553
242
Monterosso
Louis
1972
9,391.50
1,682
237
Amelburu
SANDS
Additional
Shifts
Petitioner
Year
W-2 income
toke income
worked
Basil Galanis
1972
$ 9,766.54
$1,232
243
John Ayoub
1972
7,996.67
1,250
220
1973
10,272.50
1,983
227
Ben Bravo
1972
9,322.47
1,109
220
1973
10,888.00
3,050
220
"Tokes" were received by petitioners while on duty at the tables either directly from the players or through a separate bet made for the dealer by the player in addition to his own bet. A separate bet made for the dealer was at all times under the control of the player. If such separate bet resulted in a win the player had the right to keep such winnings *96 for himself rather than give them to the dealer. Winnings from such separate bets made for the dealer belonged to the player until be actually gave such winnings to the dealer. The Nevada Gaming Commissioner considered a bet placed by a player at a blackjack table for the dealer as one made between the player and the casino. Blackjack dealers are not allowed to gamble or place bets at their tables. Under house rules at the Hilton and the Sands a blackjack dealer is not allowed to advise the player how a hand should be played or how a bet should be made. Both at the Hilton and at the Sands it was customary for a blackjack dealer to signal the receipt of "tokes" from the player either by tapping the chips on the table or by announcing their receipt verbally before pocketing said "tokes". Blackjack dealers at the Hilton and at the Sands routinely pooled all "tokes" received by them, placing said "tokes" in a common "toke" box before leaving the area of the tables on a break or at the end of a shift. The total amount so pooled was divided at the end of each 24 hour period among all blackjack dealers, roulette dealers and Big Wheel dealers on duty during that period. The pooled *97 "tokes" were divided on the basis of a full share to a dealer for each eight-hour shift. Dealers generally received their share of the pooled "tokes" in an envelope when they returned to work at the beginning of their next shift. Both at the Hilton and at the Sands some provision was made for allowing a share of the "tokes" for dealers who were unable to work due to illness. A pit area in a casino refers to the group of gaming tables involving a particular gambling activity. For example, the "21" (blackjack) pit consists exclusively of "21" tables. The number of blackjack tables in operation at the Hilton averages from 18 to 32 tables while at the Sands there were some 16 blackjack tables in operation. A pit area was normally under the control of supervisory personnel such as pit bosses and floormen. A pit boss and a floorman were considered part of the casino management and as such do not receive a share of the tokes. Respondent determined that the petitioners herein who were blackjack dealers at the Hilton in 1972 received taxable "toke" income during the year 1972 in the amount of $44 per shift. With respect to the petitioners herein who were blackjack dealers at *98 the Sands in 1972 and 1973 respondent determined that said petitioners received total taxable "toke" income in the following amounts: Basil Galanis (Docket No. 10222-77) - $13,036.95 in 1972 based upon a determination of $53.50 per shift; John Ayoub (Docket No. 11987-77) - $11,803 in 1972 based upon a determination of $53.65 per shift and $13,581 in 1973 based upon a determination of $61.73 per shift; and Ben Bravo (Docket No. 11992-77) - $11,803 in 1972 based upon a determination of $53.65 per shift and $13,580.60 in 1973 based upon a determination of $61.73 per shift. Respondent determined that petitioners received the following amounts of unreported toke income during the period involved: Petitioner
Year
Unreported "toke" income
Vernon J. Williams
1972
$10,107.00
George J. Vlashos
1972
9,769.00
Keith L. Vanstrom
1972
9,954.00
Manuel E. Paneda
1972
9,971.00
Marko Kustudia
1972
9,854.00
Tony J. Zarro
1972
7,854.00
Charles M. Hennessey
1972
9,416.00
Richard Monterosso
1972
9,095.00
Louis A. Amelburu
1972
8,746.00
Basil Galanis
1972
11,804.95
John Ayoub
1972
10,553.00
1973
11,598.00
Ben Bravo
1972
10,694.00
1973
10,530.60
*99 OPINION Initially, it is clear that the "tokes" received by petitioners in 1972 and 1973 while working as blackjack dealers at the two casinos involved (the Hilton and the Sands) represented taxable income within the meaning of section 61. Olk v. United States,536 F.2d 876 (9th Cir. 1976). Petitioners dispute the amount of additional "toke" income as determined by the respondent and, in addition, argue that the major portion of such additional income represented gambling winnings which may be offset by gambling losses. Dealers generally received "tokes" either directly from the player or as the result of a winning bet placed by the player at the dealer's table for the dealer. The contention that the "tokes" from a winning bet placed by the player constitute winnings in a gambling transaction entered into by the dealer is simply unsupported by the record. It is abundantly clear from the testimony that any amount placed as a bet by the player for the dealer remained under the player's control until the winnings, if any, were actually given to the dealer. Until that was done the dealer had no claim whatever to the "toke" and, in fact, a player was free to take *100 back a winning bet he had placed for the dealer. Moreover, a dealer had no right to pick up a bet placed for him before the cards were played. It further appears that the State regulatory commissioner regards such a transaction, i.e., a bet placed for the dealer by the player, as a wager made by the player. Finally, the evidence clearly shows that a blackjack dealer is not allowed to gamble or place a bet at his own table. In view of these considerations we regard as singularly unpersuasive petitioners' effort to categorize the transaction in question as a gambling transaction entered into by the dealer. We conclude that all "tokes" received by petitioners, whether directly from the player or through a winning bet, are taxable gratuities. Cf. Bevers v. Commissioner,26 T.C. 1218, 1221 (1956). Petitioners have the burden of showing that respondent's determinations are incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rules 142(a), Tax Court Rules of Practice and Procedure. Petitioners kept no daily records of the "toke" income received by them during the period involved and no record was apparently kept of the total "toke" income shared by *101 the participating dealers at the end of each 24-hour shift. It fairly appears on this record that the amounts of "toke" income reported by the petitioners were no more than estimates. Under such circumstances the respondent is authorized to compute income by whatever method clearly reflects the taxpayer's income. Giddio v. Commissioner, 54 T.C. 1530 (1970). We conclude that respondent's determinations have not been shown to be arbitrary or excessive. Respondent determined that the petitioners who were employed as blackjack dealers at the Hilton received "tokes" during the year 1972 in the amount of $44 per shift. Several factors were relied upon by respondent in making this determination. A detailed examination was made of some 34 income tax returns selected from the returns filed by all dealers at the Hilton. The returns selected revealed patterns of relatively higher amounts of "toke" income reported as well as large cash expenditures. Financial information was obtained from third-party sources with respect to the selected returns and, where applicable, respondent prepared a source and application of funds and bank deposit analysis with respect to selected *102 dealers. Finally, respondent also, considered the record of monthly "toke" income of one Fred Angeloh who was employed as a blackjack dealer at the Hilton for part of the year 1972 (881 hours). Angeloh (who was among the Hilton dealers being audited) supplied the record to the revenue agent upon request and subsequently supplied a notarized attestation to the accuracy of the "toke" record. The Angeloh record lists "toke" income received by him January 1972 through May 1972 on a month basis as follows: January, $864, February, $831; March, $1,021; April, $630; and May, $764. Despite diligent efforts made by respondent to locate him the whereabouts of Fred Angeloh at the time of trial remained unknown. [4]
*103 Respondent used the same approach with respect to the reconstruction of the "toke" income received in 1972 and 1973 by the petitioners employed as blackjack dealers at the Sands. The returns for the period in question filed by all dealers at the Sands were examined and some 14 returns showing relatively higher amounts of "toke" income received and indicated large expenditures were selected for detailed examination. Financial information was obtained from third party sources and a source and application of funds analysis was made with respect to each of the dealers being examined. Respondent also relied upon a contemporaneously kept daily diary showing the "toke" income received by Charles Tharp who was a blackjack dealer at the Sands from some time in 1970 through December 1972. In addition to providing information with respect to the year 1972 the Tharp diary was sufficiently complete to permit a statistical analysis yielding a reliable projection of the "toke" income received by the blackjack dealers at the Sands during the year 1973. [5]
*104 No particular method of reconstructing income is required since the circumstances will vary from case to case. Harbin v. Commissioner,40 T.C. 373, 377 (1963). The projection method based on a statistical analysis used in this case to reconstruct the income for the Sands dealers is an acceptable method of reconstruction. See, e.g., Mitchell v. Commissioner, 416 F.2d 101 (7th Cir. 1969); and Fiorella v. Commissioner, 361 F.2d 326 (5th Cir. 1966). In view of the great latitude given respondent in determining taxable income in the absence of reliable records, Giddio v. Commissioner,supra, we believe that respondent's method employed in the these cases to reconstruct "toke" income must be approved. Petitioners have not shown that the reconstruction of their income was arbitrary or without rational foundation. Nor have petitioners produced any persuasive evidence to indicate "toke" income in any lesser amounts than those determined by the respondent. Respondent's determinations must therefore be sustained and we so conclude. Petitioner George J. Vlahos (Docket No. 1173-75), who was a blackjack dealer at the *105 Hilton, argued at the trial that he received no tips whatever in 1972, a somewhat enigmatic contention since it appears that he worked 250 shifts in 1972 at the Hilton and obviously, on the basis of this record, shared in the daily distribution of "tokes" during the year. Moreover, he did in fact report additional "toke" income for 1972 in the amount of at least $1,231. We can perceive no rational basis for his contention. Moreover, he insisted on his Fifth Amendment privileges from time to time during his testimony. Absent the existence or contemplation of any criminal prosecution against him the Fifth Amendment privilege is not applicable. Roberts v. Commissioner, 62 T.C. 834, 838 (1974). Moreover, as we indicated in the Roberts case a taxpayer's privilege against self-incrimination is not violated by placing the burden of proof on him. We have carefully considered all of his testimony, as well as his arguments on brief, and we are not persuaded that he has met his burden of showing error in respondent's determination. Respondent also determined that petitioners (as indicated above) are liable for the additions to tax under section 6653(a) for the year *106 1972. [6] Sections 6653(a) provides for an addition to tax where any part of the underpayment is due to negligence or intentional disregard of rules and regulations. The burden is upon the taxpayer to show that the addition is improperly imposed. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Section 6001 and the regulations thereunder clearly require the petitioners to keep adequate records. The record clearly shows that petitioners herein failed to maintain adequate records with respect to their "toke" income and consequently we must sustain the respondent's determinations under section 6653(a). Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Vernon J. and Susan J. Williams, Docket No. 9843-74; George J. Vlahos, Docket No. 1173-75; Keith L. Vanstrom, Docket No. 1607-75; Manuel E. & Aida Paneda, Docket No. 2606-75; Marko & Idonna Kustudia, Docket No. 2755-75; Tony J. Zarro, Docket No. 4536-75; Charles M. Hennessey, Docket No. 10220-77; Basil Galanis, Docket No. 10222-77; Richard Monterosso, Docket No. 10226-77; Louis A. & Miriam Amelburu, Docket No. 10229-77; John & Deberah Ayoub, Docket No. 11987-77; Ben & Victoria Bravo, Docket No. 11992-77.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. In those instances where joint returns were filed the wives are parties hereto solely by virtue of having filed jointly with their respective husbands. Consequently, the term petitioners as used herein shall refer only to the husbands who were all employed as blackjack dealers during the period involved.
[3] Pursuant to the Order of this Court dated August 7, 1978 the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to the proceedings in these cases. Said Order is based on the authority of the "otherwise provided" language of that rule.
4. In view of Angeloh's unavailability (see Rule 804(a)(5), Federal Rules of Evidence) we believe that the record of monthly toke income, properly authenticated, is properly admissible in evidence under the exception to the hearsay rule as provided in Rule 804(b)(3), Federal Rules of Evidence, i.e., as a "statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability… that a reasonable man in his position would not have made the statement unless he believed it to be true." In so concluding we have carefully considered the arguments made by the parties on brief. We should also add that in any event the respondent's determination may often rest upon hearsay or other inadmissible evidence. See Rosano v. Commissioner, 46 T.C. 681, 687↩ (1966).
5. The statistical analysis was prepared by Doyle H. Harris, a professional statistician since 1962 and an employee of the Internal Revenue Service as a statistician since 1973. Harris testified at length at the trial with respect to his analysis of the data in the Tharp diaries and the nature of the statistical technique used to make the projections of "toke" income. The Court was impressed with the thoroughness of the statistcal analysis which enabled respondent to reconstruct the "toke" income received by the Sands blackjack dealers in 1972 based on the days of the week and to make a reliable projection of average "toke" income on a daily basis (rather than an overall weekly projection) for the year 1973.↩
6. Respondent did not determine additions to tax under section 6653(a) in the cases involving John and Deberah Ayoub (Docket No. 11987-77) and Ben and Victoria Bravo (Docket No. 11992-77).↩