Wilmar Eugene ALLEN,
Plaintiff–Appellant,

v.

U.S. GOVERNMENT DEPARTMENT OF
TREASURY and Commissioner of Internal Revenue, Defendants–Appellees.

No. 91–2837.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1992.

Rehearing Denied Dec. 16, 1992.

Wilmar Eugene Allen, pro se.

Gary R. Allen, Chief, Samuel R. Lyons, and Ann Durney, Attys., Appellate Sec. Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

In this taxpayer refund action, Wilmar Eugene Allen appeals an adverse summary judgment which holds that "tokes"—gratuities given by casino gamblers to dealers—are, like tips, compensation under the Internal Revenue Code but are not gain from wagering transactions. We affirm.

*Background*

The record reflects no factual disputes of consequence. During the years 1985 and 1986 Allen worked as a blackjack dealer at the Imperial Palace Casino in Las Vegas, Nevada. The Internal Revenue Service selected for audit his tax returns for those years. Allen could not substantiate gambling losses and the audit uncovered unreported income from tokes which were received in the course of his employment at the Imperial Palace.

Casino dealers traditionally receive tokes from patrons playing at their tables. Tokes take the form of bets placed by the patron for the dealer's benefit.[1] Dealers

---

1. Tokes also may take the form of chips given directly to the dealer. In this opinion we discuss only the wagering toke.

typically pool and split the tokes received on each shift. Tokes differ from gratuities which are given in most other situations because a casino dealer, unlike a waiter, bellhop, or other service employee, cannot provide "improved" service in hopes of receiving more or better gratuities. Indeed, casino policy prudently prohibits dealers from performing favors of any kind for any patron, regardless of gratuities given or expected.

Upon the completion of its audit the IRS gave Allen a statutory deficiency notice. Allen opted against challenging the deficiency notice before the Tax Court under 26 U.S.C. § 6213(a). The IRS then assessed and Allen paid additional tax due, interest, and penalties.[2] This refund suit followed.[3] The trial court, adopting the recommendations of a magistrate judge, granted summary judgment and Allen timely appealed.

*Analysis*

■ We review *de novo* the district court's grant of summary judgment.[4] Allen vigorously urges that his toke income constituted gain from wagering transactions under the Code, and that 26 U.S.C. § 165(d) permits him to set off his gambling losses against that gain.[5] The government rejoins that toke income constitutes compensation for services against which 26 U.S.C. § 165(d) permits no deduction for gambling losses. In the resolution of this issue we are aided by the Ninth Circuit's opinion in *Olk v. United States*[6] and a body of relevant Tax Court opinions.

In *Olk*, our colleagues considered a taxpayer's claim that tokes constitute gifts from the casino patron to the dealer and, as such, are excluded from gross income by 26 U.S.C. § 102(a).[7] Holding that tokes constitute compensation for services, the *Olk* court observed that

> receipts by taxpayers engaged in rendering services contributed by those with whom the taxpayers have some personal or functional contact in the course of the performance of the services are taxable income when in conformity with the practices of the area and easily valued. Tokes, like tips, meet these conditions.[8]

We find this reasoning, consistent with Tax Court precedents,[9] highly persuasive and we now hold that wagering tokes constitute compensation for services rendered by casino dealers.

■ Allen's contention that toke income constitutes gain from wagering transactions for the purposes of 26 U.S.C. § 165(d) fails to persuade; however, as neither the Code nor Treasury Regulations define the term "wagering transaction," we accord those words their ordinary meaning.[10] The nature of tokes persuades that they cannot constitute wagering transactions for the dealer. As Allen admitted at a hearing on the cross-motions for summary judgment, the dealer receiving a toke cannot elect to take the amount wagered on his behalf by the patron in lieu of the proceeds (if any) of that wager. The dealer has no part in deciding to make the wager, and stands to lose nothing by it. We therefore conclude that the dealer receiving a toke has not entered into a wagering transaction as con-

**2.** Allen paid the IRS $22,280.04 and $15,526.02 for 1985 and 1986, respectively.

**3.** Allen also asserted several other claims on which the trial court granted adverse summary judgment. These have not been appealed.

**4.** *See Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257 (5th Cir.1992); Fed.R.Civ.P. 56(c).

**5.** Section 165(d) provides that "[l]osses from wagering transactions shall be allowed [as a deduction] only to the extent of the gains from such transactions."

**6.** 536 F.2d 876 (9th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 317, 50 L.Ed.2d 287 (1976).

**7.** Allen challenges only the denial of his deduction for losses from wagering transactions.

**8.** *Olk,* 536 F.2d at 879.

**9.** *See, e.g., Catalano v. Commissioner,* 81 T.C. 8 (1983), *aff'd sub nom. Knoll v. Commissioner,* 735 F.2d 1370 (9th Cir.1984); *Bevers v. Commissioner,* 26 T.C. 1218 (1956).

**10.** *Boyd v. United States,* 762 F.2d 1369 (9th Cir.1985).

templated by 26 U.S.C. § 165(d).[11]

■ Allen finally suggests that application of the Code to toke income in the manner proposed by the government would fail to accord equal protection of the laws to casino dealers.[12] We are aware of no authority for the proposition that casino dealers constitute a suspect class, and because we cannot agree that the Internal Revenue Code irrationally fails to characterize toke income as "gain from wagering transactions," we must reject Allen's equal protection claim.[13]

AFFIRMED.

**11.** Our holding today accords with a long line of Tax Court decisions. *See, e.g., Catalano; Florence v. Commissioner,* 42 T.C.M. (CCH) 119 (1981); *Williams v. Commissioner,* 41 T.C.M. (CCH) 312 (1980); *Bevers. See also Boyd,* 762 F.2d at 1373–74 (where casino employee's share of fees collected from patrons was not gain from wagers entered into by employee or casino, those funds are not "gain from wagering" within the meaning of section 165(d)).

Allen suggests that false premises in the above-cited Tax Court opinions taint them. He claims that these opinions erroneously assume that the casinos merely acquiesce in, rather than actively encourage, the giving of tokes; that dealers may not gamble at their own tables; and that tokes are analogous to tips. He further urges, contrary to Tax Court rulings, that tokes cannot constitute payment incident to services rendered by dealers, because casino rules prohibit dealers from performing special services for patrons. We find these arguments unpersuasive.

**12.** Allen raises his equal protection claim under the fourteenth amendment. As that amendment has no application to the federal government, we treat this claim under the equal protection component of the fifth amendment.

**13.** *See Regan v. Taxation With Representation,* 461 U.S. 540, 547–51, 103 S.Ct. 1997, 2001–04, 76 L.Ed.2d 129, 137–140 (1983) (under equal protection component of fifth amendment, tax statute not employing suspect classification subject only to "rational basis" review).