EXECUTIVE NETWORK CLUB, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Executive Network Club v. Commissioner
Docket No. 22204-92
United States Tax Court
T.C. Memo 1995-21; 1995 Tax Ct. Memo LEXIS 24; 69 T.C.M. (CCH) 1680; January 18, 1995, Filed *24 Decision will be entered under Rule 155. For petitioner: Joseph L. Gibson, Jr. For respondent: Aretha Jones and David L. Click. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency of $ 154,810.16 in petitioner's 1991 Federal income tax. The issues for decision are: (1) Whether petitioner's casino operation was an unrelated trade or business, (2) if so, whether respondent properly determined the amount of petitioner's unrelated trade or business income, and (3) whether respondent properly disallowed certain deductions from petitioner's unrelated business income. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by this reference. On March 17, 1989, petitioner was incorporated in the State of Maryland. At the time of filing its petition, petitioner's principal place of business was Suitland, Maryland. Petitioner was formed for the stated purpose of providing assistance to handicapped and disabled *25 individuals and to serve as a conduit to raise funds for scholarships, mental and medical aid, equipment, family counseling, and general assistance to handicapped and disabled students. On April 13, 1989, petitioner was advised by the Internal Revenue Service of its exemption from Federal income tax pursuant to section 501(c)(3). Petitioner provided the following substantiated charitable contributions to the following organizations for the taxable year 1991: Recipient Amount
Date
James Ryder Randall School
$ 2,440.00
10/1/91
James Ryder Randall School
730.00
10/1/91
James Ryder Randall School
1,235.00
10/1/91
Phydeaux's for Freedom, Inc.
3,000.00
10/1/91
Veterans' Administration
179.92
12/91  During 1991, as part of its regularly conducted activities, petitioner held "Las Vegas Nights", a casino operation, at the Beltsville Volunteer Fire Department pursuant to a permit issued by the Prince George's County Department of Environmental Resources. Petitioner conducted casino events every Thursday and Friday, beginning with the first casino night held on May 30, 1991, and ending with the last held on January 30, 1992. The casino operation consisted of various *26 games of chance, including poker, piagow, super pan 9, roulette, and blackjack games. The casino was "staffed" by approximately 35 individuals on each day of operation. These individuals included "dealers, pitbosses, waitresses, managers, clericals and security." Patrons of petitioner's casino events would occasionally leave tips for the dealers. A patron would either tip a dealer directly or place a bet for the dealer's benefit. Both a cup for tipping and a box, which the dealer would use to deposit any money he or she received from patrons in exchange for chips, were generally located at the casino tables. The tips received from patrons were generally placed in the tipping cups. If, however, there was no tipping cup at the table, the dealer would place the tips that were in the form of a chip in the money box. If a tip was made in cash, as opposed to chips, and there was no tipping cup available, the dealer would convert the cash tip into chips and would place the chips in the money box. This way the tips and the money generated from gambling activities were kept separate. Approximately each hour during operation, the tips and the money generated from the casino's gambling *27 activities were collected from the various tables and taken to petitioner's office, known as the "cage". The tips were kept separate from the money that was generated from the casino's gambling activities. The tips were ultimately distributed to the workers in cash. As required by Prince George's County, petitioner filed "Quarterly Casino Night Financial Disclosure Reports". The tips that were distributed to the casino workers were not reflected in the quarterly reports filed with Prince George's County. Petitioner paid direct compensation to an individual who prepared food and provided kitchen services for the casino events, to police officers of the Prince George's County Police Department for security, and to maintenance workers. Petitioner paid rent to the Beltsville Volunteer Fire Department for use of its facilities. On January 30, 1992, the Prince George's County Police Department and agents from the Internal Revenue Service raided petitioner's casino operation. Books, records, and $ 63,000 in cash were seized in the raid. Petitioner was charged in Prince George's County with violating the law that prohibits individuals from benefiting financially from gaming activity *28 conducted by charitable organizations. Prince George's County ultimately found that there was insufficient evidence presented at the time regarding the payment of wages to the individuals that staffed petitioner's casino events. In a letter dated February 28, 1992, respondent assessed taxes of $ 154,810.16 pursuant to section 6851 (termination assessments of income tax). On July 8, 1992, respondent issued a notice of deficiency determining that petitioner was subject to unrelated business income tax of $ 154,810.16. OPINION Issue 1. Unrelated Trade or Business
The first issue we must decide is whether petitioner's casino operation constitutes an "unrelated trade or business". Respondent's determinations are presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 501(a) provides, inter alia, that an organization described in subsection (c) shall be exempt from Federal income tax. [1]Section 511(a), however, imposes a tax on the "unrelated business taxable income" of an organization that is otherwise exempt from Federal income tax under section 501(a). Section *29 512(a) provides that the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business regularly carried on by it, less allowable deductions that are directly connected with the carrying on of such trade or business. Section 513(a) provides that the term "unrelated trade or business" means any trade or business, the conduct of which is not substantially related to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501. Petitioner contends that its casino operation is excepted from the definition of "unrelated trade or business". [2]Section 311 of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 786, as amended by section 1834 of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2852, provides: *30 SEC. 311. THE CONDUCTING OF CERTAIN GAMES OF CHANCE NOT TREATED AS UNRELATED TRADE OR BUSINESS. (a) General Rule. -- For purposes of section 513 of the Internal Revenue Code of 1954 (defining unrelated trade or business), the term "unrelated trade or business" does not include any trade or business which consists of conducting any game of chance if -- (1) such game of chance is conducted by a nonprofit organization, (2) the conducting of such game by such organization does not violate any State or local law, and (3) as of October 5, 1983 -- (A) there was a State law (originally enacted on April 22, 1977) in effect which permitted the conducting of such game of chance by such nonprofit organization, but (B) the conducting of such game of chance by organizations which were not nonprofit organizations would have violated such law.
*31 Petitioner argues that its casino operation falls within the ambit of DEFRA section 311. Respondent argues that petitioner failed to show that the law in the State of Maryland authorizing casino night activities was originally enacted on April 22, 1977. Respondent contends that since the Maryland law was enacted in 1973, petitioner's casino operation is not excepted from the definition of trade or business pursuant to DEFRA section 311, as amended. We agree with respondent. In 1986, DEFRA section 311 was amended by TRA section 1834 as follows: Subparagraph (A) of section 311(a)(3) of the Tax Reform Act of 1984 [DEFRA] is amended by striking out "a State law" and inserting in lieu thereof "a State law (originally enacted on April 22, 1977)".
The legislative history explains that "the only State law to which the provision is intended to apply is a North Dakota law originally enacted on April 22, 1977." H. Rept. 99-426, at 976 (1985), 1986-3 C.B. (Vol. 2) 1, 976; S. Rept. 99-313, at 999 (1985), 1986-3 C.B. (Vol. 3) 1, 999. Accordingly, the exception for games of chance does not apply to petitioner's casino operation. *32 Petitioner also contends that its casino operation is not an "unrelated trade or business" pursuant to section 513(a)(1). Section 513(a)(1) provides that the term "unrelated trade or business" does not include any trade or business "in which substantially all the work in carrying on such trade or business is performed for the organization without compensation". Petitioner appears to contend that since the casino workers received tips as opposed to salaries, they were not compensated for their services. [3] It is well established that tips constitute compensation for services. Allen v. United States, 976 F.2d 975, 976 (5th Cir. 1992); Olk v. United States, 536 F.2d 876, 877 (9th Cir. 1976); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); Bevers v. Commissioner, 26 T.C. 1218, 1220 (1956); Roberts v. Commissioner, 10 T.C. 581, 583-584 (1948), affd. 176 F.2d 221 (9th Cir. 1949). Petitioner's contention that tips do not constitute compensation is without merit. Petitioner did not dispute on brief respondent's *33 contention that the work performed by the individuals receiving compensation constituted "substantially all the work in carrying on" the casino operation. Based on the foregoing, we sustain respondent's determination that petitioner's casino operation was an unrelated trade or business. Issue 2. Computation of Petitioner's *34 Unrelated Trade or Business Income
In determining the amount of petitioner's unrelated trade or business income, respondent reviewed petitioner's bank statements, quarterly reports filed with Prince George's County, and other documents seized in the raid on petitioner's casino operation. Where a taxpayer fails to keep adequate books and records, or if the records maintained by the taxpayer do not clearly reflect income, the Commissioner is authorized to use any reasonable means of reconstructing the taxpayer's taxable income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). It is sufficient that the reconstruction be reasonable in light of all the surrounding facts and circumstances. Schroeder v. Commissioner, supra.
Respondent computed petitioner's unrelated trade or business income as follows: Cash paid to dealers (tips) computed
on an average ($ 12,000 x 31 wks.)
$  372,000 Deposits
360,206 Expenses per quarterly reports
less withdrawals from bank accounts
204,722 936,928 Less transfers between accounts
(15,200)
Casino gross income
(unrelated business income)
921,728 Expenses per quarterly reports
(not including cash paid to dealers)
2d Quarter
$  15,993
62,225
$  78,218
3d Quarter
104,942
97,950
202,892
4th Quarter
58,882
125,412
184,294
Total expenses
(465,404)
Net income
456,324 Specific deduction -- sec. 512
(1,000)
Unrelated business taxable income
455,324 *35 As evidenced from the above computation, respondent contends that petitioner's unrelated trade or business income should include the amount of cash tips to casino workers that were pooled and then distributed to the workers. We assume that respondent contends that the payments by the patrons to the dealers were not tips, but rather, were payments to petitioner for its services and facilities and thus, income to petitioner. However, we are persuaded that the payments made by the casino patrons to the dealers were tips. The payments by the patrons to the dealers were made free from compulsion. Respondent does not argue, and no evidence was presented, that the amount of the tips was subject to negotiation or dictated by casino policy. Indeed, there was evidence to the contrary. When a patron chose to tip a dealer, the patron made the tip directly or placed the tip in front of a bet. The tips were collected from the gambling tables approximately every hour and taken to petitioner's office where they were counted and kept separate from the income that was generated from the casino's gambling activities. There was an understanding that the tips paid to the dealers were to be shared *36 among all the casino workers. After the tips had been collected, cash payments of the tips were made to the casino workers. [4] On this record, we find that the payments by the patrons to the dealers were tips from the customers to the casino workers and, therefore, do not constitute income to petitioner. It follows that respondent's computation of unrelated business income should be reduced by $ 372,000. *37 Issue 3. Deductions From Unrelated Trade or Business Income
Petitioner contends that respondent failed to allow a deduction for $ 88,500 that was purportedly "appropriated" for charitable uses. However, petitioner's chief executive officer and treasurer testified that because of the raid, much of the money that was set aside for charitable purposes was not actually paid. With respect to petitioner's contention that some of the appropriated funds were distributed for charitable purposes, petitioner did not provide any documentation supporting the payments -- the only substantiation for such payments was self-serving testimony. Accordingly, we sustain respondent on this issue. As previously discussed, respondent increased petitioner's unrelated trade or business income by the amount of tips petitioner distributed to the casino workers. Respondent then disallowed a deduction for these payments pursuant to section 162(c)(2) on the ground that they were illegal. Since we have held that the tips do not constitute unrelated trade or business income to petitioner, we need not address their deductibility. Finally, petitioner disputes various other aspects of respondent's computation *38 of unrelated trade or business taxable income. In its brief, petitioner offered its own computation of unrelated trade or business taxable income. The record does not support petitioner's computation. Indeed, after comparing petitioner's computation against respondent's, except for the issues involving tip income and the claimed deduction for "appropriated funds for charity", both of which we have already decided, petitioner's computation would result in more income than respondent's. [5] Therefore, except for respondent's inclusion of tips in income, we sustain respondent's determination of unrelated trade or business income. Decision will be entered under Rule 155. Footnotes
1. There is no dispute that petitioner was an organization exempt from Federal income tax pursuant to sec. 501(a)↩.
2. Petitioner did not dispute on brief respondent's contention that the casino operation was "regularly carried on". Indeed, the parties stipulated that the casino operation was a regularly conducted activity. Petitioner also did not dispute on brief respondent's determination that the income it derived from its casino operations was not substantially related to the exercise or performance of its charitable purpose. Accordingly, we find that petitioner has abandoned any argument on that point. See Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Leahy v. Commissioner, 87 T.C. 56, 73-74↩ (1986).
3. Petitioner argued as follows: [Respondent relies] on, among other things, the allegation that the Petitioner violated County law by paying salaries to the volunteers who acted as dealers, pit bosses and supervisors. Because of the allegation of paying salaries to volunteers, the Respondent imposed a tax against the Petitioner for unrelated business taxable income * * *. The Petitioner particularly relies on the allegation of salaries being paid to the volunteers. * * * We believe the testimony here by the Petitioner's witnesses, as well as the Respondent's witness, clearly shows that no salaries were paid to any of the volunteers who acted as dealers, pit bosses or supervisors.↩
4. The fact that the tips were shared does not preclude a finding that the payments by the patrons were tips. Similar pooling or tip-splitting arrangements have been held to constitute tip income to those participating in the pooling or tip-splitting arrangement. See Allen v. United States, 976 F.2d 975, 975-976 (5th Cir. 1992); Olk v. United States, 536 F.2d 876, 877 (9th Cir. 1976); Catalano v. Commissioner, 81 T.C. 8, 11-13 (1983), affd. without published opinion sub nom. Knoll v. Commissioner, 735 F.2d 1370 (9th Cir. 1984); Armeno v. United States, 6 Cl. Ct. 521 (1984). In respondent's regulations, respondent describes such pooling arrangements. Secs. 31.3121(a)-1(c), 31.6053-3(j)(12)-(13), and 31.6053-4(a)(2), Employment Tax Regs.; see also Guadron v. Commissioner, T.C. Memo. 1994-553; Tech. Adv. Mem. 81-46↩-001 (Sept. 21, 1978).
5. Petitioner's income computation, in which tips are first included in income and then deducted, results in net income of $ 42,421. However, petitioner arrives at this net income figure after↩ deducting $ 88,500, which was allegedly appropriated for charitable uses and has been disallowed.